UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kenyal Lamond Rodgers, #332892, | ) | C/A No. 5:15-777-BHH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| vs. | ) | |
| | ) | |
| Leroy Cartledge, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Kenyal Lamond Rodgers ("Petitioner"),[1] a state prisoner, filed this pro se Petition for

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to

28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation on Respondent's Motion for Summary Judgment and Return. ECF Nos. 29, 30.

---

[1] The proper spelling of Petitioner's last name is not completely clear from the record in this case. The Petition was submitted to this court with his Petitioner's last name spelled "Rodgers," ECF No. 1 at 1, but the signature on the Petition and the return address on the envelope in which the Petition was mailed do not appear to spell the name with a "d" in it. ECF Nos. 1 at 14 (signature), 1-1 (envelope). The Cherokee County indictment, App. 131-32, sentencing sheet, App. 133, and arrest warrant, App. 134, show Petitioner's last name spelled as "Rodgers." Also, his prison records spell his last name "Rodgers." *See* http://public.doc.state.sc.us/scdc-public (last consulted December 2, 2015). However, most of the state-court documents, including appellate opinions, ECF Nos. 30-4, 30-9, and both transcripts in the record of this case, App. 1-100, spell Petitioner's last name as "Rogers." Petitioner filed his PCR application and a pro se brief to the South Carolina Supreme Court using the "Rogers" spelling of his last name. App. 28-37; ECF No. 30-8. This spelling difference is noted herein for informational purposes. The spelling "Rodgers" is being used by this court in this habeas case because that is the spelling used on the first page of the Petition in this case, by the prison system, and by the sentencing court in Cherokee County. To avoid unnecessary confusion, the Clerk of Court has noted the spelling "Rogers" as an alias on the docket. ECF No. 37.

1

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 31. Petitioner filed a Response in opposition to Respondent's Motion. ECF No. 34. Respondent did not file a reply to Petitioner's Response. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.     Procedural History

Petitioner is currently incarcerated at McCormick Correctional Institution, part of the South Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. On March 6, 2008, a Cherokee County Grand Jury indicted Petitioner on one count of murder. App. 131-32.[2] On January 27, 2009, Petitioner submitted an *Alford* plea[3] to a reduced charge of voluntary manslaughter. App. 16-17. Attorney Thomas E. Shealy ("plea counsel") represented Petitioner and Attorney Michael Morin represented the State of South Carolina at the plea hearing. App. 1. Judge Roger L. Couch ("the plea court") accepted Petitioner's plea, App. 18-19, and sentenced him to a negotiated thirty-year sentence. App. 26.

A direct appeal from the conviction was filed in a timely manner. On September 15, 2009, Deputy Chief Appellate Defender Wanda H. Carter filed an *Anders* brief on Petitioner's behalf with the South Carolina Court of Appeals.[4] ECF No. 30-2. The only issue that appellate

---

[2] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 30-1.

[3] *See North Carolina v. Alford*, 400 U.S. 25 (1970) (permitting a court to accept a plea from a person who does not admit guilt of the charge to which he pleads, but does admit that the prosecution could likely prove the charge).

[4] *See Anders v. California*, 386 U.S. 738 (1967) (appointed appellate counsel may move

2

counsel raised in the brief was,

> The trial judge erred in accepting appellant's guilty plea in the case because he was not fully advised of the sentencing consequences.

*Id*. at 4. Petitioner was informed that he could file a pro se brief addressing any other issues that he believed the court should consider, ECF No. 30-3, but he did not do so. The South Carolina Court of Appeals granted appellate counsel's motion to withdraw and dismissed the appeal by an unpublished written order dated October 21, 2010. ECF No. 30-4. *State v. Rogers*, No. 2010-UP-452 (S.C. Ct. App. Oct. 21, 2010). The remittitur issued to the Cherokee County Clerk of Court on November 9, 2010. ECF No. 30-5.

Petitioner filed a post-conviction relief ("PCR") application on December 10, 2010, App. 28-37; *Rogers v. State*, No. 2010-CP-11-0936, raising the following points (quoted verbatim):

> (a) I contend that I was denied Due Process and Equal Protection of Law under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution as well as Article I Section 3, of the South Carolina Constitution, through and by way of Ineffective Assistance of Counsel and Trial Court error.

> (b) I assert that as a result of Ineffective Assistance of Counsel, as well as Trial Court error, I did not receive the guaranteed rights or protections pursuant to the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I Section 3 of the South Carolina Constitution.

>         . . . .

> (a) The trial court failed to adhere to the mandates and requirements of Rule 11 Section (c)(1) of the Federal Rules of Criminal Procedures; Additionally, my Alford Plea Attorney failed to discuss or explain the nature and crucial elements of the offense of Murder or Voluntary Manslaughter prior to or during my trial.

> (b) The trial court failed to comply with Rule 11 Section (d) of the Federal Rules of Criminal Procedures; Additionally, I claim that my trial counsel failed to

---

to withdraw from representation after certifying a belief that the direct appeal that counsel filed is without merit).

3

provide me with sufficient legal advise [sic] to ensure trial court that my guilty
plea was intelligently, knowingly, voluntarily and knowingly entered.

App. 36-37. At the beginning of the PCR hearing, Petitioner added a point based on the

contention that the plea court lacked subject-matter jurisdiction to accept his guilty plea because

he was denied a requested preliminary hearing prior to the filing of the indictment against him.

App. 50-57. The State filed its return to the PCR application on November 1, 2011. App. 39-44.

An evidentiary hearing was held October 4, 2013 in Spartanburg, South Carolina before the

Honorable J. Derham Cole ("the PCR court"). After his court-appointed PCR counsel was

relieved at his request, Petitioner represented himself, App. 47, and Assistant Attorney General

Suzanne H. White represented the State at the hearing. App. 48. Petitioner, his mother, and plea

counsel testified at the hearing. App. 50-100. Neither party disputes that the PCR court's order

accurately summarizes the testimony provided by the three witnesses at the PCR hearing, and the

undersigned's review of the record supports the PCR court's summary of the facts. Thus,

because the relevant portion of the order is quoted verbatim below and because relevant

testimony is cited and discussed below in the analysis of Petitioner's Grounds, it is unnecessary

for this court to provide a separate, additional summary of the testimony presented at the plea or

PCR hearings in this Report.

The PCR court issued an order dated August 30, 2012, dismissing Petitioner's PCR

application. App. 120-30. The PCR court's order contained the following findings of fact and

conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and
has heard the testimony and arguments presented at the PCR hearing. This Court
has further had the opportunity to observe each witness who testified at the

4

hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002) (citing Rule 71.1(e), SCRCP). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, Id. The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625, citing Strickland. Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland).

Applicant introduced Applicant's Exhibit #2, copies of three sign-in sheets from the Cherokee County Detention Center, indicating visits from Counsel to Applicant. Applicant testified that he was arrested on January 28, 2008, and Counsel was appointed on March 5, 2008. Applicant testified that the first time he met with Counsel was May 20, 2008. Applicant testified that they had a quick meeting about the case and bond hearing. Counsel informed Applicant that he had not received any discovery materials at that time. Applicant testified that his bond hearing was held on May 30, 2008. Applicant then testified that Counsel's second visit was on September 8, 2008. Applicant alleged that he had been granted bond on September 5, 2008, and Counsel, Judge J. Mark Hayes II, and the Assistant Solicitor were all aware that bond had been granted, but Applicant was not

released on bond. Applicant testified that on September 8, 2008, Counsel informed Applicant that there were bond conditions that still needed to be worked out. In support of this claim, Applicant submitted Applicant's Exhibit #3, which was a copy of an unsigned proposed bond order. Applicant also introduced Exhibit #4, a signed bond Order from September 5, 2008, and fax cover sheet from September 9, 2008, and Exhibit #5, a letter from the Assistant Solicitor regarding a plea offer. Applicant testified that Counsel's last visit was on January 12, 2009, at which time Counsel informed Applicant that bond had been granted and informed Applicant that the case was set for trial.

Applicant testified that he believes Counsel should have hired a private investigator. Applicant testified that he provided Counsel with an alibi defense and Counsel never investigated his alibi. Applicant testified that he was prepared to go to trial for murder. Applicant testified that he received a copy of discovery materials on January 14, 2009, which included Applicant's Exhibit #6, the SLED DNA analysis report. Applicant testified that he believed the report indicated that it was null and void. Applicant testified that Counsel never told him if the State had found the gun, never told Applicant which witnesses were going to testify at trial, and never explained the elements of murder and voluntary manslaughter to Applicant. Applicant testified that Counsel came to him and indicated that there was no way to win at trial because the autopsy report could not be explained. Applicant testified that Counsel advised him that a negotiated plea for thirty years to voluntary manslaughter was Applicant's best option. Applicant also testified that he believed that the court should have informed Applicant of the nature and critical elements of murder and voluntary manslaughter during the plea pursuant to Rule 11(c)(1), Fed Crim.P.

Angela Rogers, Applicant's mother, testified that she met with Counsel a couple of times and spoke for a couple of hours total. Ms. Rogers testified that she and Counsel discussed discovery materials mainly. Additionally, Ms. Rogers testified that Counsel told her that Applicant did not need a copy of the discovery materials in jail because other inmates could potentially use it against him and then told her what Applicant's bond amount was.

Counsel testified that he has been practicing law in South Carolina since November 8, 1978. Counsel testified that he began at the public defender's office in 1994 and the majority of his experience since 1978 has been with criminal law. Counsel testified that he met with the Applicant many more than three times. Counsel testified that the sign-in sheets are kept in a loose-leaf notebook with no custodian of the records, so he does not agree that those three sheets are indications of the only meetings he had with Applicant. Counsel testified that the initial interview with Applicant was May 20, 2008, at which time Counsel discussed the charge of murder and Applicant's prior charges of possession of crack and possession of a firearm. Counsel testified that he read the statute

6

regarding murder to the Applicant and asked Applicant if there were any questions. Also, Counsel testified that he did the same for voluntary manslaughter, as early as August 2008. In fact, Counsel testified that he reviewed the elements of murder, voluntary manslaughter and involuntary manslaughter with the Applicant. Counsel testified that he received discovery materials in Applicant's case on May 22, 2008. Counsel testified that the Applicant claimed that he blacked out at the time of the shooting and denied having any arguments with the victim. However, the victim's father was in the house at the time of the shooting and was planning on testifying that he heard the arguing. Additionally, the victim's young daughter was present at the time of the shooting and was a witness, along with the video of the car showing the Applicant running from police. Counsel testified that he spoke with the Applicant about the witness statements and video. Counsel testified that he talked with the Applicant about presenting a defense of accident, but there was never an alibi defense. Counsel testified that the Applicant's ability to testify at trial was hurt because he was seen with the gun as he had run away from the victim's home.

Counsel testified that the Applicant was informed that bond had been granted, and agreed that bond was not granted until after the hearing in September 2008. Counsel testified that the Applicant called Counsel from the jail regarding bond and a copy of the Order granting bond was sent to Applicant on December 5, 2008. Counsel testified that the Applicant called Counsel from the county jail using three-way calling often, but Counsel advised Applicant that because the calls were recorded, it was not a good idea. Counsel testified that in most of their conversations, the Applicant appeared to be more concerned about bond than the case. Counsel testified that the Applicant authorized Counsel to negotiate with the Solicitor's office regarding a possible plea offer. Counsel testified that he attempted to negotiate a plea to involuntary manslaughter, but the Solicitor rejected that.

This Court finds the testimony of Counsel to be more credible that [sic] the testimony of the Applicant. The Applicant's allegation that Counsel did not conduct an adequate pre-trial investigation is without merit. Following testimony and review of the transcript, it is clear that Counsel had reviewed the facts and evidence, as well as the options that Applicant faced. The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered. or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998); Skeen v. State, 325 S.C. 210, 481 S.E.2d 129 (1997) (applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have had any possible effect on the result at trial). The Applicant failed to point to any specific matters Counsel failed to discover, or any

defenses that could have been pursued had Counsel been more fully prepared. Although he alleged that Counsel failed to investigate Applicant's alibi defense, the Applicant failed to present any evidence or witness that would have supported that defense. Furthermore, the Applicant failed to show any prejudice that may have resulted from Counsel's alleged inadequate preparation. Accordingly, this allegation is dismissed.

Additionally, as to the Applicant's claim that Counsel was ineffective for failing to review the elements of the charges with Applicant prior to his plea, this Court finds that the Applicant has failed to meet his burden of proof. This Court finds Counsel's testimony on this issue to be credible. Further, the transcript reflects that the Applicant was asked if Counsel reviewed the elements with him and the Applicant indicated in the affirmative. In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court held that the two-part standard adopted in Strickland v. Washington, supra, for evaluating claims of ineffective assistance of counsel applies, as well, to guilty plea challenges based on ineffective assistance of counsel. To meet the Court's "prejudice" requirement, a criminal defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill at 59. Not only did the Applicant fail to establish that Counsel did not properly review the charge that Applicant faced or pled guilty to or investigate the case, but the Applicant has failed to establish that he would have proceeded to trial, but for, these alleged deficiencies of Counsel. Therefore, this claim is denied and dismissed.

**Lack of Subject Matter Jurisdiction**

Applicant testified that he was arrested on January 28, 2008, and was taken before a magistrate judge on January 30, 2008, at which time he was informed of his right to a preliminary hearing and the fact that he had ten days from the 30th to request a hearing. Applicant testified that he did want to know if there was probable cause for his arrest, so he did request a preliminary hearing. Applicant introduced his request for a preliminary hearing as Applicant's Exhibit #1. Applicant testified that he never received his preliminary hearing, so he believes that the indictments were null and void. Applicant acknowledged that a preliminary hearing is not constitutionally mandated, but required only by state statute. Counsel testified that he was appointed in early March and the Applicant was indicted by the Cherokee County Grand Jury on March 6, 2008.

A defendant has no constitutional right to a preliminary hearing. State v. Keenan, 278 S.C. 361, 365, 296 S.E.2d 676, 678 (1982). Thus, although the Applicant may have timely requested a preliminary hearing, his right to have the hearing ended with the grand jury's indictment. However, the Applicant has claimed  that the trial court lacked subject matter jurisdiction due to the fact that

8

he was never provided with a preliminary hearing. Subject matter jurisdiction is the power of a court to hear a particular class of cases. See State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005); Dove v. Gold Kist, Inc., 314 S.C. 235, 442 S.E.2d 598 (1994). An Applicant may still challenge the subject matter jurisdiction of the trial court, and such a claim is one that may be raised at any time. See Brown v. State, 343 S.C. 342, 540 S.E.2d 846 (2001), overruled in part by Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005). However, "[c]ircuit courts obviously have subject matter jurisdiction to try criminal matters." Gentry, 363 S.C. 93, 610 S.E.2d 494, 499 (2005); See also S.C. Const. Art. V, § 7. Thus, the Applicant must present evidence that his case is of some class over which the circuit court does not have the authority to preside. The Applicant's conviction involved a criminal charge in General Sessions Court. Thus, the circuit court had subject matter jurisdiction. This claim is denied and dismissed.

**Trial Court Error**

The Applicant also alleged that the trial court erred during his guilty plea when Applicant was not informed of the critical elements of the offenses of murder and voluntary manslaughter at the plea. To find a guilty plea is voluntarily and knowingly entered into, the record must establish the Applicant had a full understanding of the consequences of his plea and the charges against him. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969); Dover v. State, 304 S.C. 433, 405 S.E.2d 391 (1991). In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence presented at the PCR hearing. Harris v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984). This Court finds that there was no error. The court completed a thorough plea colloquy, including making sure the Applicant was clear as to the charge he was pleading to, the constitutional rights he was giving up at the plea, and the consequences of pleading at that time. Therefore, this Court finds that this allegation is denied and dismissed.

**Summary**

This Court finds in regards to the allegations of ineffective assistance of counsel, the Applicant's testimony is not credible. This Court further finds Counsel adequately conferred with the Applicant, conducted a proper investigation, was thoroughly competent in his representation, and that Counsel's conduct does not fall below the objective standard of reasonableness.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test -- that Counsel failed to render reasonably effective

assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that Counsel committed either errors or omissions in his representation of the Applicant.

This Court also finds the Applicant has failed to prove the second prong of Strickland -- that he was prejudiced by Counsel's performance. This Court concludes the Applicant has not met his burden of proving Counsel failed to render reasonably effective assistance. See Frasier *supra*. Therefore, this allegation is denied.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

App. 121-129.

A *Johnson* petition for writ of certiorari seeking review of the PCR court's final judgment was submitted on Petitioner's behalf to the South Carolina Supreme Court on June 4, 2014.[5] ECF No. 30-6; *Rogers v. State*, No. 2014-000547 (S.C.). South Carolina Appellate Defender Robert M. Pachak raised the following issue for the court's review quoted verbatim: "Whether plea counsel was ineffective in failing to pursue an alibi defense." ECF No. 30-6 at 3.

Petitioner submitted a pro se petition, raising the following issues, quoted verbatim:

Whether plea counsel was ineffective in failing to discuss or explain the nature and crucial elements of the offense of murder or voluntary manslaughter prior to the plea?

Whether the plea was intelligently, knowingly, and voluntarily entered?

Whether trial court error?

---

[5] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

Whether lack of jurisdiction?

ECF No. 30-8 at 3. The South Carolina Supreme Court relieved PCR appellate counsel from representation and denied the petition on October 8, 2014. ECF No. 30-9. The appellate remittitur issued on October 24, 2014. ECF No. 30-10.

II.    Discussion

    A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: THE TRIAL COURT ERRED BY ACCEPTING GUILTY PLEA WITHOUT FULLY ADVISING DEFENDANT OF SENTENCING CONSEQUENCES . . . A DEFENDANT MUST BE INFORMED OF THE MINIMUM AND MAXIMUM SENTENCE IN THE CASE.
>
>     . . . .
>
> GROUND TWO: INEFFECTIVE ASSISTANCE . . . COUNSEL FAILED TO DISCUSS AND EXPLAIN NATURE AND CRUICAL [sic] ELELMENT [sic] OF OFFENSE OF MURDER OR MANSLAUGHTER COUNSEL FAILED TO PROVIDE ADEQUATE LEGAL ADVICE TO ENSURE THE COURT THAT PLEA WAS INTELLIGENT, KNOWINGLY AND VOLUNTARILY ENTERED[.]
>
>     . . . .
>
> GROUND THREE: TRIAL COURT ERROR . . . THE COURT FAILED TO ADHERE TO THE MANDATES AND RULES 11 . . . (e)(1)(d)[.]
>
>     . . . .
>
> GROUND FOUR: LACK OF JURISDICTION . . . APPLICANT WAS DENIED A PRELIMINARY HEARING COUNSEL WAS APPOINTED MARCH 5, 2008 AND APPLICANT WAS INDICTED MARCH 6, 2008 AND APPLICANT WAS DENIED COUNSEL DURING THE CRITICAL STAGES

ECF No. 1 at 5-10.

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v.*

12

*Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### C.    Habeas Corpus Standard of Review

#### 1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

##### a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended

in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at

102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet,

that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th

Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on

his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal

determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court
> decision was either (1) "contrary to . . . [clearly] established Federal law as
> determined by the Supreme Court of the United States," or (2) "involved an
> unreasonable application of . . . clearly established Federal law, as determined by
> the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly

established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v.

Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a

state-court decision is "contrary to" clearly established federal law, the federal court may not

grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme

Court on a legal question, the state court decided the case differently than the Court has on facts

that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the

facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application"

portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or

erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.       Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under §

15

2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 526 U.S. at 101.

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or

16

laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i) there is an absence of available State corrective process; or
>
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant

shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

### b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

19

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider

claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id.*

### III.    Analysis

#### A.    Procedurally Barred and Non-Cognizable Claims

##### 1.    Ground One: The Trial Court Erred By Accepting Guilty Plea Without Fully Advising Defendant Of

21

Sentencing Consequences . . . A Defendant Must Be Informed Of The Minimum And Maximum Sentence In The Case.

a.     The Parties' Positions

Respondent contends that Petitioner's Ground One (regarding the plea court's alleged failure to specifically inform Petitioner of the minimum and maximum sentences and the "mental element" for the charge to which he pleaded) is procedurally defaulted because it was not preserved for review by plea counsel at the plea hearing. ECF No. 30 at 12. Respondent acknowledges that Petitioner's appellate counsel included "a similarly phrased argument in the *Anders* process" that served as Petitioner's direct appeal, but asserts that the lack of a contemporaneous objection during the plea hearing precluded the appellate court from considering the merits of that argument. *Id*. Respondent also contends, alternatively, that this Ground is without merit in light of Petitioner's affirmative responses to the plea court's colloquy questions regarding Petitioner's understanding of the range of possible sentences for the charge to which he pleaded and his desire to enter the negotiated plea, which Petitioner acknowledged included a thirty-year sentence. Respondent also points to Petitioner's PCR testimony regarding his knowledge that a thirty-year sentence was part of the negotiated plea deal. *Id*. at 14-15. Petitioner responds that Ground One was exhausted "in his (PCR) action." ECF No. 34-1 at 1. He contends that this Ground presents a valid challenge to the voluntariness of his plea and that any procedural default should be excused due to ineffective assistance of counsel because the *Anders* and *Johnson* procedures employed by his court-appointed appellate counsel were "based upon an unreasonable determination of the facts and in light of the evidence in the state court proceedings." *Id*. at 2, 4-5.

b.     Discussion

As stated previously, if a habeas petitioner fails to properly present the substance of his ground for relief to a competent state court at any point in the exhaustion process, that ground is procedurally defaulted or bypassed. *Smith v. Murray*, 477 U.S. at 533. The United States Supreme Court has held that unexplained failure of the petitioner to contemporaneously object to the trial-court error asserted as a ground for habeas relief bars federal court consideration of the alleged error. *Wainwright v. Sykes*, 433 U.S. at 91; *see Murray v. Carrier*, 477 U.S. at 492 (holding that, in absence of a showing of ineffective assistance, a habeas petitioner is bound by his counsel's failure to raise a particular issue before a state court). This court has recognized that "South Carolina has a contemporaneous objection rule," and has stated that "[u]nless the trial court makes a final ruling on an issue, it is not preserved for appellate review." *Small v. Bodison*, No. 3:08-cv-2828-HFF-JRM, 2009 WL 1728562, at *7 (D.S.C. June 18, 2009) (citing *State v. Rice,* 652 S.E.2d 409 (S.C. Ct. App. 2007)); *see Ivey v. Ozmint*, No. 0:07-cv-4024-GRA-BM, 2008 WL 1787481, at *25 (D.S.C. April 17, 2008); *see also* Fed. R. Civ. P. 46 (codifying the contemporaneous-objection rule). It has also recognized that a petitioner's failure to preserve by contemporaneous objection a specific allegation of trial court error allegedly affecting the voluntariness of a plea is not cured by the submission of an *Anders* brief on direct appeal asserting a broad question about whether the trial court erred in finding that the petitioner's plea was "freely, voluntarily, knowingly, and intelligently made." *Alston v. Warden, Perry Corr. Inst.*, No. 9:08-939-HFF-BM, 2009 WL 559922, at **2, 5 (D.S.C. March 3, 2009); *see Mitchell v. Stevenson*, No. 9:14-cv-04539-RBH, 2015 WL 5231833, at *5 (D.S.C. Sept. 8, 2015) (citing *Jamison v. State,* 765 S.E.2d 123, 128 (2014) for the proposition that

appellate courts considering either an *Anders* brief or a *Johnson* petition are "required to review the entire record . . . for any *preserved* issues with potential merit" and will not consider the merits of an unpreserved claim). In has also been held that a federal court may only consider those claims which have been "fairly presented" to the state courts. *See Matthews v. Evatt*, 105 F.3d at 911. For an particular issue to be found to have been "fairly presented" in state court, the Fourth Circuit has held that the claim must '"be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)); *see also Gordon v. Braxton*, 780 F.3d 196, 201 (4th Cir. 2015); *Fullwood v. Lee*, 290 F.3d 663, 676 n.4 (4th Cir. 2002); *Boseman v. Bazzle*, 364 F. App'x 796, 803-04 (4th Cir. 2010).

Following independent review of the record in this case, the undersigned disagrees with Respondent's contention that Petitioner's failure to object to the sufficiency of the plea court's colloquy at the time the plea was taken resulted in procedural default or bypass of his current Ground One. The record discloses that neither Petitioner nor plea counsel made any objection to anything that the plea court did or did not do or say in connection with the plea hearing, App. 4-26. However, the State did not file anything with the South Carolina Court of Appeals alerting that court to Respondent's current position that the point raised in appellate counsel's *Anders* brief was barred from the court's consideration by the lack of a contemporaneous objection to the sufficiency of the plea court's colloquy. Moreover, the State did not object by way of a Rule 59(e) motion or otherwise to Petitioner's inclusion of the substance of this Ground in his PCR testimony, App. 67-70, or to the PCR court's inclusion of a discussion of the merits of the issue

24

in its dismissal order, App. 128-29.[6] *See* John H. Blume & Emily C. Paavola, *A Reintroduction: Survival Skills for Post-Conviction Practice in South Carolina*, 4 Charleston L. Rev. 223, 270 (2010) ("a Rule 59(e) motion may also be used when the order contains an erroneous finding of fact, a misapplication of law, or if there has been intervening authority relevant to an issue in the case"); *cf. Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (if PCR court fails to address a particular claim, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to preserve the issue for review). Thereafter, although Petitioner's statement of the issues in his pro se petition was vague,[7] the argument section of the pro se petition expanded on those statements using both state and federal law as support and sufficiently placed the federal nature of his position before the South Carolina Supreme Court. Thus, the undersigned finds that Petitioner "fairly presented" the substance of his current Ground One to highest court with the responsibility to review it: the South Carolina Supreme Court through its certiorari review of the PCR dismissal order. *See Matthews v. Evatt*, 105 F.3d at 911 ("To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."). The record shows that this fair presentation was made without objection from the State. Accordingly, in light of Petitioner's pro se status both during the PCR application and hearing process, App. 28-37 (pro se-prepared PCR application), 47-48 (Petitioner discharged his appointed PCR counsel before the PCR hearing and chose to represent himself); the State's failure to object to the inclusion of the substance of

---

[6] *See Colonial Refrigerated Transp., Inc. v. Mitchell*, 403 F.2d 541, 552 (5th Cir. 1968) (recognizing that reviewing courts have "power" in "exceptional cases" to consider *sua sponte* errors that were not preserved by contemporaneous objection).

[7] Petitioner's "issues presented" included: "Whether the plea was intelligently,

25

Ground One in the PCR process; and giving Petitioner the benefit of the most liberal construction of the pleadings, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (pro se pleadings are to be liberally construed and held to a less stringent standard than those drafted by attorneys), the undersigned finds Ground One not procedurally barred and will address the merits of Ground One subsequently in this report.

> 2.    Ground Four: Lack Of Jurisdiction . . . Applicant Was Denied A Preliminary Hearing Counsel Was Appointed March 5, 2008 And Applicant Was Indicted March 6, 2008 And Applicant Was Denied Counsel During The Critical Stages

> a.    The Parties' Positions

Respondent contends that this Ground is not cognizable before this court because it raises an issue governed by state law governing the criminal-indictment process and the availability of preliminary hearings in state-court cases. ECF No. 30 at 22-23. Respondent also contends that Petitioner waived any right to contest the jurisdiction of the state court by entering his *Alford* plea. *Id*. at 23. Petitioner responds that his appellate counsel caused any bypass of this issue. ECF No. 34-1 at 6. Petitioner also asserts that his claim of denial of "due process" resulting from the state court's failure to afford him his requested preliminary hearing before he was indicted and then proceeding with his case in absence of subject matter jurisdiction is cognizable in this court because it "rests clearly upon Federal Law established by the United States established by the United States Supreme Court . . . ." *Id*. at 7.

> b.    Discussion

It is well established that the issue of whether or not a court acts with the requisite

---

knowingly, and voluntarily entered" and "whether trial court error." ECF No. 30-8 at 3.

jurisdiction is a matter of state law and, therefore, not cognizable in federal habeas actions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (jurisdiction is a matter of state law); *McCray v. Maynard*, No. 6:02-cv-0838-19AK, 2002 WL 32078935, *6 (D.S.C. March 20, 2002) (same; citations omitted). Additionally, the United States Supreme Court has held that habeas grounds challenging a state's indictment process raise matters of state law. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("the Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States.").

Petitioner does not provide the court with legal authorities contradicting or calling into question the validity or applicability to this case of the law cited above. In fact, other than one conclusory statement that [t]he claim is cognizable in (PCR) actions . . . ," ECF No. 34-1 at 7, Petitioner does not mention cognizability in his Response to the Motion for Summary Judgment. Instead, he appears to confuse the concept of cognizability with that of procedural default and urges that "appellate counsel caused the procedural default." *Id*. at 6. Thus, nothing in Petitioner's Response provides any ground for this court to disregard the holdings in the cases cited above. Accordingly, the undersigned finds that Petitioner's Ground Four is not cognizable in this case and that Respondent's Motion for Summary Judgment be granted as to Petitioner's Ground Four.

> B.      Merits Analysis: Grounds One, Two, Three
>
>> 1.      Ground One: The Trial Court Erred by Accepting Guilty Plea Without Fully Advising Defendant of Sentencing Consequences . . . A Defendant Must Be Informed of the Minimum And Maximum Sentence in the Case.

### a.    The Parties' Positions

Respondent contends that the plea court clearly explained the potential sentences that Petitioner was facing and made sure that Petitioner intended to plead no contest to voluntary manslaughter in exchange for a thirty-year sentence. ECF No. 30 at 14. Respondent asserts that Petitioner's affirmative responses to the plea court's inquiries into his understanding of and potential sentencing range for the charge to which he was pleading and of the terms of the negotiated plea, coupled with plea counsel's credible testimony both at the plea hearing and the PCR hearing, fully support the PCR court's determination that no error was presented by the plea colloquy. *Id*. at 15. Petitioner responds that his plea was involuntary because the plea court did not advise him of the "nature and critical elements of the charge." ECF No. 34-1 at 6.

### b.    Discussion

The PCR court found that the plea colloquy was "thorough" and that the plea court made sure that Petitioner "was clear as to the charge he was pleading to" and as to consequences of entering the plea. App. 128-29. The United States Supreme Court has stated that "[i]t is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 29 (1992). The Court has also held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). When a criminal defendant enters into a plea to settle a pending charge against him, he waives any independent constitutional claim regarding matters that took place before entry of the plea and can "only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was incompetent. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Additionally, persons

who enter into pleas are generally bound by the statements that they make at the plea hearing. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Only limited exceptions to this rule are available, such as where credible facts are presented to show that the plea is "the product of such factors as misunderstanding, duress, or misrepresentation by others." *Id.; see also Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (*citing Brady*, 397 U.S. at 755, finding no cause for a court to disregard apparently truthful statements where petitioner "presented no evidence of sufficient evidentiary force, *e.g.,* evidence that he was forced, coerced, threatened, or improperly induced into pleading guilty"). The Fourth Circuit Court of Appeals has held that a habeas petitioner is bound by his statements at a plea hearing unless he can prove facts justifying application of an exception by "clear and convincing evidence . . . ." *Walton v. Angelone*, 321 F.3d at 462; *see also Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1974) (defendant's plea statements "conclusive[]" absent defendant's showing in collateral proceeding "a valid reason why he should be permitted to depart from the apparent truth of his earlier statement.").

Following independent review of the record, the undersigned finds that the plea court did, in fact, conduct a thorough colloquy and closely examined Petitioner's understanding of the charge and potential sentencing range to which he was exposed. The record discloses that Petitioner is an educated person, having completed three years of college, App. 9, 73, and that he clearly and consistently told the plea court that he understood the charge and potential sentence, that he knew a thirty-year sentence is what had been negotiated between plea counsel and the Solicitor on his behalf, and that he wanted to enter the *Alford* plea as explained to him by the plea court and plea counsel. Petitioner's response to Respondent's contentions before this court does not provide any facts or argument that would require the court to disregard Petitioner's and plea counsel's testimony before

the plea court. Instead, Petitioner strings together what appear to rote recitations of "headnote" language from a Westlaw key number ("constitutional law key 265.5"), a habeas case from the Ninth Circuit Court of Appeals affirming the denial of relief, *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995), an automobile negligence-related case from the South Carolina Supreme Court, *Marley v. Kirby*, 245 S.E.2d 604 (S.C. 1978), and two clearly distinguishable United States Supreme Court cases, *Henderson v. Morgan*, 426 U.S. 637 (1976) (neither the plea court nor plea counsel "explained" intent element to petitioner with "unusually low mental capacity"), and *Boykin v. Alabama*, 395 U.S. 238 (1969) (involving a guilty plea where "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court."). Without any real discussion of the applicability of this law to the exact facts of his own case -- wherein he testified that he had a substantial education; where there was a detailed discussion of all aspects of his plea between himself and the plea court, App. 5-14, 16-18; where Petitioner replied "yes, sir, I understand, you Honor" to the court's explanations of the consequences of the negotiated plea and declined the court's offer to explain "the elements of the lesser included offense of voluntary manslaughter", App. 5-7; and where Petitioner affirmatively responded to the court's question about whether he was "satisfied with [his] attorney's services," App. 9 -- Petitioner's broad and factually unsupported assertion of "fundamental miscarriage of justice" arising from the plea court's acceptance of his *Alford* plea fails. ECF No. 34-1 at 5.

Petitioner's and plea counsel's testimony, given in response to the plea court's many inquiries into Petitioner's understanding of the plea he was entering and his satisfaction with plea counsel's services, fully supports the PCR court's determination that the plea colloquy satisfied constitutional requirements and that Petitioner failed to prove his claim otherwise. The undersigned

finds that the PCR court's finding in this regard was based on a reasonable determination of the facts shown on this record and was not contrary to established federal law as determined by the United States Supreme Court. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground One.

     2.     Ground Two: Ineffective Assistance . . . Counsel Failed to Discuss and Explain Nature and Crucial Elements of Offense of Murder or Manslaughter Counsel Failed to Provide Adequate Legal Advice to Ensure the Court that Plea was Intelligent, Knowingly, and Voluntarily Entered.

     a.     The Parties' Positions

Respondent contends that the PCR court reasonably found that plea counsel was not ineffective because Petitioner told the plea court that plea counsel sufficiently explained the charge filed against him and the lesser charge to which he entered his *Alford* plea. Respondent also asserts that the PCR court's finding is supported by plea counsel's credible testimony that he fully explained the elements and sentencing consequences of the relevant charges to Petitioner. ECF No. 30 at 17-18. Respondent further contends that Petitioner did not prove that he would have proceeded to trial on the murder charge that was pending against him had plea counsel conducted additional investigation or provided additional or more detailed explanation of the murder charge and its lesser-included offenses. *Id*. at 18-19. Petitioner responds that plea counsel's failure to investigate his alibi "could have changed the outcome of the proceeding." ECF No. 34-1 at 8-9. Petitioner also contends that plea counsel's PCR testimony is contradicted by "the exhibits and attachments." *Id*. at 9.[8]

---

[8] Petitioner does not provide any facts about his "alibi," and the only reference to it during the PCR hearing was during the State's cross examination of Petitioner about the factual circumstances of the crime scene and very briefly during plea counsel's PCR testimony on cross examination. Petitioner stated that there was no alcohol in his system and "they found . . .

b.      Discussion

The PCR court found that Petitioner failed to prove that plea counsel rendered ineffective assistance. In doing so, the court explicitly found that plea counsel's testimony at the PCR hearing was more credible than Petitioner's and that the plea transcript and plea counsel's testimony at both the plea and PCR hearings showed that counsel conducted an adequate analysis of the facts and evidence against and in favor of Petitioner, and that he adequately explained the pending charge and possible lesser charges and sentencing consequences to Petitioner. App. 126-27. The PCR court also found that Petitioner did not prove ineffective assistance with regard to plea counsel's investigation or preparation for trial because Petitioner did not point out anything relevant to his case that that plea counsel failed to discover. The PCR court also noted that Petitioner failed to discuss or show any defense that plea counsel could have pursued with additional preparation. Additionally, the PCR court noted that Petitioner did not discuss or produce any witnesses at the PCR hearing who would have supported the alibi defense that he claimed plea counsel did not investigate. App. 126. Finally, the PCR court found that Petitioner did not prove that he would not have pleaded no contest to voluntary manslaughter and would have gone to trial on the murder charge had plea counsel explained the elements of the respective charges better. App. 126-27.

Applicable law indicates that where allegations of ineffective assistance of counsel are

---

alcohol spilled on the floor" and "[t]here were numerous people in the household during that day." App. 76. Petitioner then responded to the State's question about whether there was a "third party in the room that could have shot [the victim]," that "I actually had an alibi defense. My attorney never followed that alibi defense up . . . ." *Id*. Plea counsel testified that Petitioner did not offer an alibi for him to investigate. App. 99. Also, Petitioner does not specify which "attachments and exhibits" contradict which particular portion of plea counsel's testimony other than by listing six pages in the appendix without discussion or analysis of those pages. ECF No.

made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court articulated a two-prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense to the extent that the Petitioner was deprived of a fair trial. The Fourth Circuit Court of Appeals has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d 1348, 1352 (4th Cir. 1982). "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing *Goodwin v. Balkcom,* 684 F.2d 794, 805 (5th Cir. 1982)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d 1147, 1149-50 (5th Cir. 1978)). Furthermore, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). Additionally, the Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Finally, the Fourth Circuit has also held that

---

34-1 at 9.

district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

Following review of the record and giving appropriate deference to the PCR court's findings, the undersigned finds that the court correctly found that Petitioner did not sustain his burden of proof on his claim of ineffective assistance of plea counsel. Petitioner's and plea counsel's PCR testimony was in sharp conflict regarding the number of times they met and what was discussed during those meetings, and Petitioner broadly asserts that plea counsel's testimony is contradicted by other testimony and exhibits. As support for this contention, Petitioner simply references five pages of the Appendix before this court. The undersigned has reviewed those pages: App. 15, 22-23, 93, 96, 127, to determine whether they support Petitioner's current contentions. The testimony at page 15 consists of a portion of the Assistant Solicitor's presentation at the plea hearing of the evidence the State had compiled against Plaintiff; pages 22-23 consist of a portion of plea counsel's testimony at the plea hearing wherein he recounted Petitioner's version of the circumstances leading to the gunshot that killed the victim, discussed his own impressions of a contradictory autopsy report and of how a jury might view Petitioner in light of the circumstances surrounding the shooting, and described a meeting between himself and Petitioner's mother and aunt. Page 93 is a portion of Petitioner's pro se examination of plea counsel at the PCR hearing wherein plea counsel told Petitioner that they discussed the elements of murder and its lesser included offenses so that Petitioner would understand what he was pleading to should the state agree to a plea and disputing Petitioner's assertion that the plea was

negotiated "behind [his] back" and without his being informed about the negotiations. Page 96 is a portion of plea counsel's PCR testimony, given on cross examination by the State's counsel wherein plea counsel again recounts what he perceived as Petitioner's version of the circumstance surrounding the shooting and is substantially similar to the testimony he gave at the plea hearing. Finally, page 127 is a portion of the PCR court's order that contains the court's findings that plea counsel's explanation of the charges that Petitioner faced or pleaded to and plea counsel's investigation of the case were adequate and that Petitioner failed to show that he would have proceeded to trial with additional information. The remainder of that page contains the PCR court's discussion of Petitioner's claim that the state court lacked subject-matter jurisdiction.

The undersigned fails to see how the testimony recorded on the cited pages "show counsel's assertions is [sic] without factual basis" as Petitioner asserts. ECF No. 34-1 at 9. At most, they show that plea counsel investigated and analyzed the facts surrounding the victim's death, including both the State's and Petitioner's version of the events, and made considerable effort to discuss his analysis and concerns with Petitioner and his family members. The only contradictory information appears to have come directly from Petitioner's own testimony before and argument to the PCR court. As the applicable law holds, the PCR court was in the best position to resolve conflicting testimony and to determine the credibility of the witnesses who appeared before it. Plea counsel's testimony at both the plea and PCR hearings and Petitioner's own affirmative responses to the plea judge's inquiries into his satisfaction with plea counsel's explanation of the applicable law and charges and with his services in general support the PCR court's decision. Petitioner has provided nothing to this court that calls the truth of his prior

testimony into question or requires it to be disregarded, thus his statements to the plea court should be accepted as true and binding on him. Petitioner's conclusory statement that plea counsel should have better investigated his alleged alibi defense is of no moment in this case because he fails to provide any supporting evidence or discuss any potential witness testimony that plea counsel failed to discover that would have supported the alibi.

The undersigned finds that the record fully supports the PCR court's decision that plea counsel's testimony was more credible than Petitioner's. Also, Petitioner has not produced any clear and convincing evidence that would require this court to disregard the PCR court's findings or to reject Petitioner's plea hearing testimony that he was satisfied with plea counsel's services and that he understood the charge to which he pleaded no contest. Under these circumstances, the PCR court's determination that Petitioner failed to prove that plea counsel was ineffective was reasonable and in accord with established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Two.

3.      Ground Three: Trial Court Error . . . the Court Failed to Adhere to the Mandates and Rules 11 . . . (e)(1)(d).

a.      The Parties' Positions

Respondent contends that the PCR court correctly rejected Petitioner's claim that the trial court's colloquy was inadequate and that his plea was rendered involuntary because the colloquy did not satisfy the requirements of Federal Rule of Criminal Procedure 11 because a plea proceeding in a South Carolina state court, as here, is not governed by federal rules of procedure. ECF No. 30 at 20. Respondent further contends that the PCR court's finding that the plea colloquy was constitutionally sufficient is supported by the record. *Id*. at 21. Petitioner responds

that "[t]he trial court erred in complying with Rule (11)(c)" and "the state was alerted to the federal nature of the claim that is required." ECF No. 34-1 at 7-8. Petitioner cites to three federal cases without discussion of their holdings or relevance to this Ground: *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000). ECF No. 34-1 at 8.

b.    Discussion

The PCR court did not explicitly reference Federal Rule of Criminal Procedure 11 in connection with its analysis of Petitioner's allegations of trial court error in connection with the sufficiency of the plea colloquy. App. 128-29. However, in her introductory statements at the PCR hearing, counsel for the State said that one of Petitioner's contentions was that plea counsel "failed to adhere to mandates and rules of rules (c)(1) and (d)." App. 46. Also, in his introductory statement to the PCR court, Petitioner, representing himself, referred specifically to "rule 11(c)(1) of the federal rules of criminal procedure" as the basis for his assertion that he "wasn't afforded to be informed of the critical elements by the judge . . . ." App. 69. Additionally, the PCR court referenced Petitioner's "Rule 11(c)(1), Fed. Crim. P." allegations in its summary of the testimony. App. 124. Thus, the record discloses that the PCR court was aware that Petitioner was relying on Rule 11 as support for his allegations that the plea judge's colloquy was inadequate to ensure that the *Alford* plea was voluntary and knowing.

Applicable law holds that state proceedings do not have to strictly comply with federal rules of procedure to be constitutional, and that federal rules of procedure do not govern state court proceedings. *See, e.g., Miles v. Dorsey*, 61 F.3d 1459, 1466-67 (10th Cir. 1995); *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980); *Wade v. Coiner*, 468 F.2d 1059, 1060 (4th Cir.

1972); *Folkes v. Warden Cartledge, PCI*, No. 2:13-cv-00147-RMG, 2013 WL 6662554, at 8 (D.S.C. Dec. 17, 2013). None of the three cases cited by Petitioner in his Response to the Motion for Summary Judgment on this Ground contains anything contradictory to this applicable law. *Picard v. Connor*, 404 U.S. 270, 275 (1971) did not address the sufficiency of a plea colloquy, but, instead, addresses the issue of exhaustion of state remedies with respect to a conviction entered following a jury trial. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) also did not involve the sufficiency of a plea colloquy. Like, *Picard*, it involved the issue of whether or not the petitioner adequately exhausted his state remedies by "fairly presenting" a federal claim of ineffective assistance of appellate counsel to a state court. Finally, *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) also involved the issue of whether a habeas petitioner who was convicted by a jury adequately exhausted a federal due process issue relating to a jury instruction. Thus, Petitioner fails to provide any plausible support for his assertion that the plea colloquy needed to comply fully with Rule 11 of the Federal Rules of Criminal Procedure and his contention is legally incorrect. As stated in connection with the analysis of the merits of Petitioner's Ground One, the PCR court's finding that the plea colloquy complied with applicable constitutional standards was reasonable under the facts shown on this record, and it was not contrary to established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Three.

IV.    Conclusion

The undersigned has considered each of Petitioner's grounds for habeas-corpus relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 29, be GRANTED and that the Petition in this case be DISMISSED with

prejudice. **Petitioner's attention is directed to the important notice on the following page.**

IT IS SO RECOMMENDED.

Kaymani D. West

December 8, 2015                          Kaymani D. West
Florence, South Carolina                 United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).